UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| 21ST CENTURY FINANCIAL SERVICES, LLC, | Case No.: 15-cv-01848-BTM-BGS |
|---|---|
| Plaintiff, | **ORDER DENYING MOTION TO ADD MANCHESTER FINANCIAL GROUP, INC. AS AN ADDITIONAL JUDGMENT DEBTOR** |
| v. | |
| MANCHESTER FINANCIAL BANK, aka MANCHESTER FINANCIAL BANK (IN ORGANIZATION), aka MANCHESTER FINANCIAL BANK (PROPOSED), | **[ECF No. 56]** |
| Defendant. | |

Before the Court is Plaintiff's motion to add Manchester Financial Group, Inc. ("Manchester, Inc."), as a judgment debtor. (ECF No. 56.) For the reasons below, Plaintiff's motion will be denied.

## I.  BACKGROUND

This case has a lengthy history that includes an arbitrated contractual dispute, post-arbitration proceedings in Texas federal district court,[1] and an appeal to the United States Court of Appeals for the Fifth Circuit,[2] culminating in these

---

[1] 21st Century Financial Services, LLC v. Manchester Financial Bank, No. A-10-CV-803-LY, 2013 WL 12120971 (W.D. Tex. Mar. 22, 2013).

[2] 21st Century Financial Services, L.L.C. v. Manchester Financial Bank ("21st Century"), 747 F.3d 331 (5th Cir. 2014).

post-judgment collection proceedings.  As the case history is both extensive and familiar to the parties, the Court recites here only those aspects relevant to the current motion.

A group of individuals, including Doug Manchester, Richard Gibbons, and Steve Strauss, sought to charter a bank to be called Manchester Financial Bank, N.A.[3]  In February 2008, the Bank[4] entered into an "Agreement for Computer Processing Services" (the "Agreement") with 21st Century Financial Services, LLC (hereafter "Plaintiff" or "21st Century").[5]  The Agreement included an arbitration provision and was signed by Frederick Mandelbaum, a consultant hired to serve as the Bank's CEO.[6]  The Bank was never capitalized.[7]  Its pre-formation expenses were funded by Manchester Financial Group, L.P. ("MFG, LP").[8]  In connection with the Agreement, MFG, LP issued two deposit checks to 21st Century.[9]  The checks were signed by Gibbons, president of Manchester, Inc., the limited partnership's general partner.[10]

In October 2008, Mandelbaum advised 21st Century the Bank venture was not going to move forward, apparently as a result of Doug Manchester's decision based on "current economic turmoil."[11]  21st Century thereafter issued invoices for

---

[3]  21st Century, 747 F.3d at 333; Declaration of Summer Wynn in Supp. of Opp., Ex. D (ECF No. 57-2) Manchester, Inc.'s exhibits are attached to the Wynn Declaration and are identified alphabetically, and hereafter will be referred to simply as "Ex. A," "Ex. B," etc.
[4]  Based on its stages of organization, the bank is identified as "Manchester Financial Bank, aka Manchester Financial Bank (In Organization), aka Manchester Financial Bank (Proposed)." The Court will refer to the bank in all its stages of organization as the "Bank."
[5]  21st Century, 747 F.3d at 333; Declaration of Mary R. Robberson, Esq. in Supp. of Mot., Ex. 7 (ECF No. 56-9) 21st Century's exhibits are attached to the Robberson Declaration and are identified numerically, and hereafter will be referred to simply as "Ex. 1," "Ex. 2," etc.
[6]  21st Century, 747 F.3d at 333; Ex. 7.
[7]  Ex. 1 (ECF No. 56-3) (Mandelbaum Deposition) at 61:17-62:13; Ex. 4 (ECF No. 56-6) (Gibbons Deposition) at 24:22-25:20).
[8]  Pl.'s Mot. at 19:26; Ex. 4 at 24:22-25:20; Exs. 5 (ECF No. 56-7), 6 (ECF No. 56-8).
[9]  21st Century, 747 F.3d at 333; Exs. 5, 6.
[10]  Ex. 4, Gibbons Depo. at 21:17-23; Ex. 39 (ECF No. 56-42) (Doug Manchester was limited partner of MFG, LP), Tab 7 at 000217 (Certificate of Amendment of Articles of Incorporation dated 9/27/05 showing Gibbons was president of Manchester, Inc.).
[11]  21st Century, 747 F.3d at 334; Ex. 8 (ECF No. 56-10).

15-cv-01848-BTM-BGS

amounts it claimed were due under the Agreement.[12]  In email exchanges between Mandelbaum, Gibbons, and Doug Manchester, Mandelbaum recommended that payment be issued to 21st Century on behalf of the Bank.[13]

Payment was not forthcoming, and 21st Century, now represented by counsel, sent letters demanding payment and threatening arbitration.[14]  Michael Levinson and Steve Strauss, both partners at the law firm Cooley LLP ("Cooley"), the same firm that represents Manchester, Inc. in these proceedings, responded to the letters on behalf of "Manchester Financial Group."[15]  The dispute escalated, and 21st Century initiated arbitration proceedings before the American Arbitration Association in Austin, Texas, pursuant to the Agreement's arbitration venue selection clause.[16]  Correspondence and notice regarding the arbitration proceedings were served on MFG, LP, as well as Doug Manchester on behalf of the Bank.[17]

The arbitration was held in January 2010.[18]  Although the Bank did not appear, the arbitrator required 21st Century to present evidence in support of its claims.[19]  The arbitrator found in favor of 21st Century and issued an award of $422,036.39, plus post-judgment interest, attorneys' fees and costs.[20]

21st Century sued in Texas state court to confirm the award and named as defendants the Bank as well as its individual proposed shareholders and Mandelbaum.  The Bank removed the action to federal court.  The record shows that Cooley represented the individual shareholders, though not the Bank, in the

---

[12] 21st Century, 747 F.3d at 334.
[13] Exs. 9 (ECF No. 56-11), 11 (ECF No. 56-13), 12 (ECF No. 56-14).
[14] 21st Century, 747 F.3d at 334.
[15] Ex. 13 (ECF No. 56-15); Ex. 22  (ECF No. 56-25).
[16] Ex. 7 § 11.2.
[17] Exs. 23-34 (ECF Nos. 56-26 through 56-37).
[18] Ex. 15 (ECF No. 56-17).
[19] Id.
[20] Id.

ensuing proceedings.[21]

The District Court for the Western District of Texas dismissed the shareholders, confirmed the arbitration award and entered judgment against the Bank.[22]  The Fifth Circuit affirmed.[23]

On April 25, 2014, 21st Century registered the judgment in this Court and initiated enforcement proceedings.[24]  Following debtor examinations of Mandelbaum and Gibbons, 21st Century filed a motion to amend the judgment to add MFG, LP, and Manchester, Inc., as judgment debtors.  In an order issued May 19, 2016, the Court denied the motion without prejudice on the ground that adding MFG, LP as a judgment debtor would destroy diversity of citizenship, such that it lacked subject matter jurisdiction to grant the motion as to MFG, LP.

On June 22, 2016, 21st Century filed the instant motion seeking to add Manchester, Inc. as a judgment debtor.  Manchester, Inc. opposes the motion.

## II.  DISCUSSION

### A. Objections to Evidence

21st Century has submitted 41 exhibits in support of its motion.  Manchester, Inc. objects to Exhibit Nos. 3, 9, 11, 12, and 41.  Opp. at 25:21-23.  21st Century has offered no response to the objections, see Reply Br., despite the fact that it is the proponent of the exhibits and bears the burden of proof of their admissibility. See Pfingston v. Ronan Eng'g Co., 284 F.3d 999, 1004 (9th Cir. 2002) (declining to address moving party's argument that statements satisfied Rule 801(d)(2)(D) hearsay exception where the exception was not offered as a ground for admissibility in proceedings before district court) (citing Sana v. Hawaiian Cruises, Ltd., 181 F.3d 1041, 1045 (9th Cir. 1999); Oki Am., Inc. v. Microtech Int'l, Inc., 872

---

[21]  See Exs. 16 (ECF No. 56-18), 17 (ECF No. 56-19), 35 (ECF No. 56-38).
[22]  Ex. 18 (ECF No. 56-21).
[23]  21st Century, 747 F.3d at 333-39.
[24]  ECF No. 1.

F.2d 312, 314 (9th Cir. 1989)).  However, since the Court is denying the motion even with consideration of the allegedly objectionable evidence, ruling on the objections is unnecessary.

The Court does note that Manchester, Inc. objects to Exhibit 41, a printout from the "Manchester Financial Group" website, on grounds of relevance, foundation and authentication.  Because Exhibit 41 was extensively relied upon by Plaintiff, the Court addresses these objections.  "In considering internet print-outs, courts have considered the 'distinctive characteristics' of the website in determining whether a document is sufficiently authenticated."  <u>Haines v. Home Depot U.S.A., Inc.</u>, No. 1:10-cv-01763-SKO, 2012 U.S. Dist. LEXIS 47967, at *23 (E.D. Cal. Apr. 4, 2012).  "For example, courts have considered website print-outs sufficiently authenticated where the proponent declared that they were true and correct copies of pages on the internet and the print-outs included their webpage URL address and the dates printed."  <u>Id.</u> (citing <u>Perfect 10, Inc. v. Cybernet Ventures, Inc.</u>, 213 F. Supp. 2d 1146, 1154 (C.D. Cal. 2002)).  At least one district court has determined that the foundational requirement is met where an internet printout is properly authenticated.  <u>Premier Nutrition, Inc. v. Organic Food Bar, Inc.</u>, No. SACV 06-0827 AG (RNBx), 2008 U.S. Dist. LEXIS 78353, at *19 (C.D. Cal. Mar. 27, 2008).  Here, 21st Century's counsel attests that the exhibit consists of true and correct copies of pages she personally printed from the website. Robberson Decl. ¶ 45.  The URL address, www.manchesterfinancialgroup.com, appears at the bottom of each page of the printout, and the date "6/8/2016", apparently the print date, is on the top of each page.  The Court thus finds the authentication and foundational requirements are sufficiently met with regard to Exhibit 41.

Manchester, Inc.'s relevance objection to Exhibit 41 is not without merit.  The website printout is a multi-page document promoting the experience and success of "Manchester Financial Group."  <u>See</u> Ex. 41.  Although the website does not

mention the Bank, 21st Century relies on it to prove the existence of a so-called "Manchester Financial Group single enterprise." Other district courts have rejected attempts to prove unity of interest of affiliated companies on the basis that their website presents them as a single entity. Corcoran v. CVS Health Corporation, 169 F. Supp. 3d 970, 984 (N.D. Cal. 2016); Payoda, Inc. v. Photon Infotech, Inc., No. 14–cv–04103–BLF, 2015 WL 4593911, at *3 (C.D. Cal. 2015) (calling statements on a company website "marketing puffery" that "carries no weight in establishing whether a parent and its subsidiary are in fact alter egos"). Here, 21st Century is attempting to use Exhibit 41 for precisely that purpose. While the Court finds the reasoning of the Corcoran and Payoda courts persuasive, neither court excluded website printouts from evidence on grounds of relevance. Therefore, rather than exclude Exhibit 41 from evidence, the Court will consider the reasoning of the district courts in Corcoran and Payoda as going to the weight, rather than the admissibility, of Exhibit 41. Accordingly, Manchester, Inc.'s relevance objection to Exhibit 41 is overruled.

B. Motion to Add Manchester, Inc. as Judgment Debtor

21st Century moves to amend the judgment to add Manchester, Inc. as a judgment debtor pursuant to California Code of Civil Procedure § 187 ("Section 187"), which provides:

> When jurisdiction is, by the Constitution or this Code, or by any other statute, conferred on a Court or judicial officer, all the means necessary to carry it into effect are also given; and in the exercise of this jurisdiction, if the course of proceeding be not specifically pointed out by this Code or the statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this Code.

Cal. Code Civ. Pro. § 187. Section 187 "has been interpreted to grant courts the authority to amend a judgment to add additional judgment debtors." Katzir's Floor and Home Design, Inc. v. M-MLS.COM ("Katzir's Floor"), 394 F.3d 1143, 1148 (9th

Cir. 2004) (citations and quotation marks omitted).  The Ninth Circuit has approved the use of the state procedure pursuant to Federal Rule of Civil Procedure 69(a). Id. (citing In re Levander, 180 F.3d 1114, 1120-21 (9th Cir. 1999)).  California law governs the merits of such a motion.  In re Levander, 180 F.3d at 1121.

Modification of a judgment is a matter for the trial court's discretion.  Wolf Metals Inc. v. Rand Pacific Sales, Inc., 4 Cal. App. 5th 698, 703 (2016).  "The ability under section 187 to amend a judgment to add a defendant, thereby imposing liability on the new defendant without trial, requires *both* (1) that the new party be the alter ego of the old party *and* (2) that the new party had controlled the litigation, thereby having had the opportunity to litigate, in order to satisfy due process concerns."  Toho-Towa Co., Ltd. v. Morgan Creek Productions, Inc. ("Toho-Towa"), 217 Cal. App. 4th 1096, 1106 (2013) (emphasis in original) (citation omitted); see Katzir's Floor, 394 F.3d at 1148-50 (district court erred in adding individual as judgment debtor where evidence in the record failed to show individual was alter ego of existing debtor, or controlled the litigation); NEC Electronics Inc. v. Hurt ("NEC") 208 Cal. App. 3d 772, 778-81 (1989) (reversing trial court's order amending judgment to add debtor where there was insufficient evidence the debtor controlled underlying litigation).  The moving party bears the burden of proof by a preponderance of the evidence.  Highland Springs Conference & Training Center v. City of Banning, 244 Cal. App. 4th 267, 280 (2016).

1.  Alter Ego

Imposition of alter ego liability is "an extreme remedy, [to be] sparingly used" and "approached with caution."  Santa Clarita Org. for Planning & Env't v. Castaic Lake Water Agency, 1 Cal. App. 5th 1084, 1105 (2016) (citations and internal quotation marks omitted).  Therefore, "the corporate form will be disregarded only in narrowly defined circumstances."  Toho-Towa, 217 Cal. App. 4th at 1107 (citations and internal quotation marks omitted).

//

Usually, alter ego liability is reserved for parents and their subsidiaries, or corporations and their shareholders. See id. Here, however, 21st Century asserts that Manchester, Inc. was part of a "single enterprise" consisting of the Bank, MFG, LP, and Manchester, Inc.[25] Under the "single enterprise" rule, liability can be found between sibling companies. Las Palmas Assocs. v. Las Palmas Center Assocs., 235 Cal. App. 3d 1220, 1249 (1992). "The 'single-business enterprise' theory is an equitable doctrine to reflect partnership-type liability principles when corporations integrate their resources and operations to achieve a common business purpose." Toho-Towa, 217 Cal. App. 4th at 1108 (citations omitted).

The alter ego doctrine "is not made to depend upon prior decisions involving factual situations which appear to be similar …. It is the general rule that the conditions under which a corporate entity may be disregarded vary according to the circumstances of each case." Id. at 1108 (citations and internal quotation marks omitted). However, "common principles apply regardless of whether the alleged alter ego is based on piercing the corporate veil to attach liability to a shareholder or to hold a corporation liable as part of a single enterprise." Id. Factors to be considered include inadequate capitalization, commingling of funds and other assets of the two entities, the holding out by one entity that it is liable for the debts of the other, identical equitable ownership in the two entities, use of the same offices and employees, use of one as a mere conduit for the affairs of the other, disregard of corporate formalities, lack of segregation of corporate records,

---

[25] 21st Century struggles to identify the entities that participated in the single enterprise. It alleges:
- "The evidence here shows the existence of such a single enterprise—the 'Manchester Financial Group'—made up of 'Manchester Financial' entities, including, among other entities, Manchester Financial Group, L.P., and its general partner, Manchester Inc., as well as the Bank." Pl.'s Mot. at 2:3-6 (emphasis added); and
- "There are a number of Manchester Financial Group entities, including, but not limited to, Manchester, Inc., MFG, LP, Manchester Texas Financial Group, Manchester Hospitality Group, and Bank." Pl.'s Mot. at 11:3-5 (emphasis added).

Manchester, Inc. interprets 21st Century's motion as seeking to establish that the enterprise consisted of three entities, the Bank, MFG, LP, and Manchester Inc. See Opp. at 9:28-10:2. The Court agrees this appears to be 21st Century's essential position and adopts this interpretation in analyzing the motion.

and identical directors and officers.  Id. at 1108-09; Greenspan v. LADT LLC, 191 Cal. App. 4th 486, 512-13 (2010); Eldorado Stone, LLC v. Renaissance Stone, Inc., No. 04cv2562 JM(CAB), 2009 WL 347005, at *5 (S.D. Cal. Feb. 5, 2009). "No one characteristic governs, but the courts must look at all the circumstances to determine whether the doctrine should be applied."  Sonora Diamond Corp. v. Superior Court of Tuolumne County, 83 Cal. App. 4th 523, 539 (2000).

In sum, to prevail on its motion to add Manchester, Inc. as a judgment debtor under Section 187, 21st Century bears the burden to prove by a preponderance of the evidence that Manchester, Inc. was an alter ego of the Bank.  See In re Levander, 180 F.3d at 1121 (a Section 187 motion to add a judgment debtor requires "that the new party be the alter ego of the old party"); Toho-Towa, 217 Cal. App. 4th at 1106 ("The ability under section 187 to amend a judgment to add a defendant, thereby imposing liability on the new defendant without trial, requires … that the new party be the alter ego of the old party….").

### a. 21st Century's Theory of Alter Ego Liability

21st Century attempts to prove Manchester, Inc.'s alter ego liability under the theory that it was part of a "Manchester Financial Group single enterprise" that consisted of a number of entities, including MFG, LP, Manchester, Inc., and the Bank.[26]  It relies on evidence that MFG, LP hired Mandelbaum and advanced the Bank's pre-formation expenses without expectation of repayment (including the deposit checks to 21st Century), responded, through Cooley, to 21st Century's demand letters seeking payment of the Bank's debt,[27] received notices and briefs in connection with the arbitration proceedings against the Bank, and funded the

---

[26]  See n. 25, supra.
[27]  Although the initial letter from Cooley referred to "Manchester Financial Group" without identifying the partnership specifically, it was in response to 21st Century's opening demand letter apparently sent to Crystal Tidball.  See Ex. 13.  Although 21st Century's demand letter to Tidball is not in evidence, subsequent correspondence from 21st Century's counsel specified service on Crystal Tidball, c/o Manchester Financial Group, LP.  See Exs. 23, 26. Accordingly, the references appear to be to the partnership.

Bank's defense in post-arbitration litigation. Mot. at 19-25. 21st Century also points to the fact that Doug Manchester signed Mandelbaum's consulting agreement, was to be the primary shareholder and source of capital for the Bank, see Ex. 38 (Bank organization certificate), and made the decision not to move forward with the Bank venture. Although the foregoing acts primarily implicate MFG, LP, 21st Century relies on the fact that Manchester, Inc. was the general partner of MFG, LP, and that Gibbons, purportedly in his role as president of Manchester, Inc.,[28] ran the day-to-day operations of MFG, LP and signed checks drawn on MFG, LP's account.

21st Century's theory that Manchester, Inc. should be held liable as part of a "single enterprise" consisting of the Bank, MFG, LP, and Manchester, Inc., has certain flaws that merit comment at the outset. To begin with, it obtains its notion of a "Manchester Financial Group single enterprise" largely from the "Manchester Financial Group" website, which presents the appearance of a single "Manchester Financial Group" entity without distinguishing between Manchester, Inc. and MFG, LP. Id. at 11 (citing Ex. 41 (printouts from Manchester Financial Group website)). However, that a website presents affiliated entities as a single business "carries no weight" in proving alter ego liability. Payoda, 2015 WL 4593911, at *3; Corcoran, 169 F. Supp. 3d at 983-84. To the extent 21st Century relies on vague references to "Manchester Financial Group" in other documents or witness testimony, see Pl.'s Mot. at 13:9-11 (corporate minutes said "Manchester Financial Group," "no 'Inc.' or 'L.P' designation" would pay Bank's pre-opening expenses), the ambiguity is frequently clarified by other evidence in the record, as 21st Century appears to recognize, see id. at 21:9-16 (stating funds used to pay the Bank's pre-opening expenses were those of MFG, LP), or, as in the case of

---

[28] As discussed below, Gibbons's testimony was unclear, so this fact has not been established as clearly as 21st Century contends.

deposition testimony, the ambiguity was invited by 21st Century's counsel, as discussed in detail below. 21st Century's burden is to prove a single enterprise not just on the basis of semantic ambiguity, but based on the conduct of the proposed debtor as measured against the alter ego factors. See Toho-Towa, 217 Cal. App. 4th at 1107-08. To regard Manchester, Inc. as lacking a distinct identity solely on the basis of imprecise language reads too much into the imprecision.

Another difficulty with 21st Century's motion is it relies extensively on evidence implicating MFG, LP, in an effort to establish Manchester, Inc.'s liability. Although it refers to Manchester, Inc.'s status as the general partner of MFG, LP, 21st Century does not clearly explain the theory on which it seeks to hold Manchester, Inc. liable for the conduct of MFG, LP. Manchester, Inc. objects to 21st Century's extensive reliance on evidence and argument implicating MFG, LP, since in the cases cited by 21st Century, "the single enterprise theory was applied to impose alter ego liability on entities that were parties to that case." Id. at 10:5-7. 21st Century responds that it can rely on MFG, LP's acts to hold Manchester, Inc. liable, because they were partners, not "separate corporate entities." Reply at 2:4-6. The Court agrees with Manchester, Inc. that 21st Century's theory of liability is flawed.

First, 21st Century appears to believe that MFG, LP's conduct can simply be imputed to Manchester, Inc., because the two entities are partners and thus, in 21st Century's view, legally indistinguishable. See Reply at 2:4-6 ("Manchester, Inc. and MFG L.P. are *partners*—not separate corporate entities.") (emphasis in original). However, MFG, LP is a California limited partnership, a "creature of statute." Anaheim Gardens v. United States, 118 Fed. Cl. 669, 673 (2014) (citing Evans v. Galardi, 16 Cal. 3d 300, 306 (1976)).[29] Under California law, a limited

---

[29] The California Uniform Limited Partnership Act of 2008 ("ULPA"), California Corporations Code §§ 15900 et

15-cv-01848-BTM-BGS

partnership maintains a separate identity from its general partners. <u>United States v. Galletti</u>, 541 U.S. 114, 116 (2004). Thus, to the extent 21st Century appears to believe the partnership relationship of MFG, LP and Manchester, Inc., means any distinction between them can be ignored for purposes of assessing Manchester, Inc.'s alter ego liability, it is incorrect.

Second, 21st Century relies extensively on the fact that Gibbons, purportedly as president of Manchester, Inc., ran the operations of MFG, LP, and in doing so appears to contend the arrangement shows the two entities lacked a separate existence. Pl.'s Mot. at 12:6-7 ("In his capacity as President of Manchester, Inc., and as admitted by him, Mr. Gibbons runs the day to day operations of and makes the 'operational decisions' for MFG, LP…."), 21:1-3 ("The [deposit] checks were signed by Mr. Gibbons, President of Manchester, Inc.…."). However, there was nothing improper about Gibbons's conduct. California Corporations Code § 15904.02(a) provides, in pertinent part, that

> Each general partner is an agent of the limited partnership for the purposes of its activities. An act of a general partner, including the signing of a record in the partnership's name, for apparently carrying on in the ordinary course the limited partnership's activities or activities of the kind carried on by the limited partnership binds the limited partnership….

Cal. Corp. Code § 15904.02(a). Thus, that Gibbons ran MFG, LP's operations in his capacity as president of Manchester, Inc., and signed checks drawn on the account of MFG, LP, is not evidence of a disregard for their distinct roles. Rather, the expectation inherent in the limited partnership structure is that the general partner (or, as here, the president of the corporate general partner) will manage the partnership's affairs. No inference of wrongdoing is created by such an

---

seq., currently governs all California limited partnerships, including those that, like MFG, LP, were formed before 2008. <u>See</u> Cal. Corp. Code § 15912.06(b); Ex. 39, Tab 3, at 000209 (Certificate of Limited Partnership of MFG, LP filed 2/27/1985); <u>and see</u> Cal. Corp. Code § 15912.07 (ULPA "does not affect [a]… right accrued before this chapter becomes operative"); Cal. Corp. Code § 15912.04 (operative date of ULPA is January 1, 2008, before Plaintiff entered into the Agreement with the Bank and thus before its claim accrued).

15-cv-01848-BTM-BGS

arrangement.  See Ohlweiler v. Bank of Am. Corp., 2016 U.S. Dist. LEXIS 38009, at *8 (Cal. Ct. App. 2016) (unpub. decision) ("it is irrelevant [to an alter ego theory] that the Plaintiff signed checks and made withdrawals from [the corporation] because he did so in his capacity as an officer, director, and stockholder of the company").  Also, to the extent a limited partnership acts through its general partner, under § 15904.02(a), such acts are imputed to, and binding on, the partnership.

Although 21st Century relies on the partnership relationship of MFG, LP and Manchester, Inc., the Court does not construe it to advance a theory of partnership liability as a basis for holding Manchester, Inc. liable for the allegedly wrongful conduct of MFG, LP, e.g., that MFG, LP was the Bank's alter ego, and that its resulting liability should be imputed to Manchester, Inc., as the general partner. Such a theory of liability, even if it is advanced by 21st Century, appears to run afoul of two provisions of the ULPA.

First, California Corporations Code § 15904.04(a) provides that "all general partners are liable joint and severally for all obligations of the limited partnership…."  Cal. Corp. Code § 15904.04(a).  "Obligations" are legally binding duties arising from tort or contract.  Cal. Code Civ. Pro. § 26; Avner v. Outpatient Surgical Med. Unit of Santa Monica, No. B248523, 2014 WL 4561129, at *5 (Cal. Ct. App. 2014) (unpub.) (relying on CCP § 26 definition of "obligation" to interpret § 15904.04(a)).  21st Century has never brought a successful alter ego claim against MFG, LP, so there has never been a determination that it has a legally binding duty to pay the Bank's debt, and this Court lacks jurisdiction to make such a determination.  The Court agrees with Manchester, Inc. that MFG, LP thus has not acquired an "obligation" for the Bank's debt.  See Opp. at 9:9-12.

Even if MFG, LP's unadjudicated alter ego liability could be construed as an "obligation" within the meaning of § 15904.04(a), holding Manchester, Inc. liable in the first instance based on MFG, LP's misconduct conflicts with a second statutory

restriction. California Corporations Code § 15904.05(c) provides that "a judgment creditor of a general partner may not levy execution against the assets of the general partner to satisfy a judgment based on a claim against the limited partnership" unless one of several requirements is met. Cal. Corp. Code § 15904.05(c).[30] The listed requirements "essentially cabin[] the partner's duty to pay" the debts of the limited partnership. Avner, 2014 WL 4561129, at *5. The first restriction is that a creditor cannot pursue assets of the general partner for debts of the limited partnership unless "a judgment based on the same claim has been obtained against the limited partnership and a writ of execution on the judgment has been returned unsatisfied." Cal. Corp. Code § 15904.05(c)(1). In Avner, the Court of Appeals interpreted §15904.05(c)(1) as effectively precluding a creditor from obtaining a judgment against a general partner based on a claim against the limited partnership unless it obtains a judgment against the limited partnership based on the same claim. Avner, 2014 WL 4561129, at *5. Section 15904.05 is a new provision within the ULPA, and Avner is the only case that has analyzed it. Although Avner is an unpublished decision, its reasoning is consistent with that of other courts addressing similar provisions. See Westlake Mgmt. Co. v. QC Property Holdings LLC, --- Fed. Appx. ----, 2016 WL 7487719, at *3 (10th Cir. 2016) (unpublished) (describing an identically-worded provision of Oklahoma law

---

[30] The full text of California Corporations Code § 15904.05(c) is as follows:
"(c) A judgment creditor of a general partner may not levy execution against the assets of the general partner to satisfy a judgment based on a claim against the limited partnership, unless the partner is personally liable for the claim under Section 15904.04 and:
(1) a judgment based on the same claim has been obtained against the limited partnership and a writ of execution on the judgment has been returned unsatisfied in whole or in part;
(2) the limited partnership is a debtor in bankruptcy;
(3) the general partner has agreed that the creditor need not exhaust limited partnership assets;
(4) a court grants permission to the judgment creditor to levy execution against the assets of a general partner based on a finding that limited partnership assets subject to execution are clearly insufficient to satisfy the judgment, that exhaustion of limited partnership assets is excessively burdensome, or that the grant of permission is an appropriate exercise of the court's equitable powers; or
(5) liability is imposed on the general partner by law or contract independent of the existence of the limited partnership."

15-cv-01848-BTM-BGS

as meaning that "before the creditor attempts to satisfy an obligation of the partnership against the assets of the partners, he must first obtain a judgment against the partnership 'based on the same claim'…"); Ehrenberg v. WSCR, Inc. (In re Hoover WSCR Assocs.), 268 B.R. 227, 235 (C.D. Cal. 2001), aff'd, 2005 Bankr. LEXIS 3267 (9th Cir. B.A.P. 2005) (holding that a similar provision applicable to general partnerships, California Corporations Code § 16307(c), "specifically insulates a partner's assets from the claims of partnership creditors unless the latter has a judgment against the partner on the partnership debt").

The Avner court's interpretation of § 15904.05(c) is also consistent with general principles of partnership liability. The Supreme Court has stated that "[u]nder California law, a partnership maintains a separate identity from its general partners, and the partners are only secondarily liable … for any debt of the partnership." Galletti, 541 U.S. at 116. Secondary liability means "liability that is derived from the original or primary liability." Id. at 122 n.4. By requiring creditors of a limited partnership to exhaust partnership assets before pursuing assets of the general partner to collect on a claim against the partnership, § 15904.05(c)(1) enforces the principle that the limited partnership bears primary liability for its debts. Here, 21st Century's motion, if successful, would result in a judgment against Manchester, Inc. To the extent any such judgment was based on a putative claim of alter ego liability against MFG, LP, it would violate § 15904.05(c)(1), because 21st Century has not successfully pursued an alter ego claim or obtained a judgment against MFG, LP.

Even if the foregoing statutes did not bar the Court from imputing MFG, LP's conduct and alter ego liability on Manchester, Inc. in the first instance as a matter of law, equitable considerations weigh against doing so. 21st Century appears to include MFG, LP as part of the "single enterprise," in part to fill a gap in the evidence implicating Manchester, Inc. From the record, it appears that during debtor examinations, the two witnesses, Mandelbaum and Gibbons, were never

asked about Manchester, Inc.  There is no evidence identifying the owners of Manchester, Inc., the employees of each entity, and other factors relevant to establishing Manchester, Inc.'s alter ego liability.  The discovery rules that apply to postjudgment execution proceedings "are quite permissive," Republic of Argentina v. NML Capital, Ltd, 134 S. Ct. 2250, 2254 (2014), and allow a judgment creditor to "obtain discovery from any person," Fed. R. Civ. P. 69(a).  There is no discernible reason the record could not have been more fully developed with regard to Manchester, Inc. prior to filing this motion.  Under these circumstances, it does not seem equitable to fill the evidentiary gap by simply imputing the acts of MFG, LP to Manchester, Inc.

The Court also cannot ignore that 21st Century is attempting to impose liability on Manchester, Inc., based on evidence implicating MFG, LP, because it is proceeding in a forum that lacks jurisdiction over MFG, LP.  Even if the jurisdictional issue was a problem it did not predict, 21st Century has known that MFG, LP had a role in funding the Bank's expenses since January 2008, when it accepted its first of two checks from "Manchester Financial Group, LP" in payment of its deposit on behalf of Bank.  Ex. 5.  Despite that knowledge, it appears 21st Century has never tried to pursue MFG, LP as an alter ego in any prior proceeding, even though it included individual Bank shareholders as purported alter egos in arbitration confirmation proceedings in Texas state court, and even though it pursued the same shareholders to collect on the arbitration award in an action filed in October 2012 in San Diego Superior Court.  Exs. M, N.  Imposing MFG, LP's liability on Manchester, Inc. now, because its options in this forum are limited, is an inequitable solution for what is effectively a problem of 21st Century's own making.  Eldorado Stone, LLC, 2009 U.S. Dist. LEXIS 8430, at *12-14 (denying motion to add judgment debtor under Section 187 where moving party failed to explain its delay in proceeding against purported alter egos).

In sum, 21st Century's theory of single enterprise is flawed to the extent it

presupposes the existence of a "Manchester Financial Group single enterprise" based primarily on the "Manchester Financial Group" website. Its theory is also flawed to the extent it relies on their partnership relationship to erroneously characterize MFG, LP, and Manchester, Inc. as legally indistinguishable entities, and to support imputing MFG, LP's conduct and liability to Manchester, Inc. In evaluating 21st Century's motion, the Court therefore focuses on determining whether Manchester, Inc., as the party to be added to the judgment, conducted itself as an alter ego of the Bank. <u>See</u> <u>Toho-Towa</u>, 217 Cal. App. 4th at 1106 ("The ability under section 187 to amend a judgment to add a defendant, thereby imposing liability on the new defendant without trial, requires … <u>that the new party be the alter ego of the old party</u>…." (emphasis added)).

> b. <u>Whether 21st Century Has Met Its Burden of Proof that the Alter Ego Factors Support Adding Manchester, Inc. as a Judgment Debtor</u>

The Court considers whether 21st Century's evidence satisfies the alter ego factors as to Manchester, Inc.

> 1) <u>Mischaracterization of Supporting Evidence</u>

The evaluation of 21st Century's evidence is complicated by the fact its brief mischaracterizes certain evidence. Courts do not consider arguments based on factual assertions that are not supported by the record. <u>Daniel F. v. Blue Shield of Calif.</u>, 305 F.R.D. 115, 122-23 (N.D. Cal. 2014).

21st Century relies extensively on the two depositions taken in the course of these post-judgment proceedings. Despite the fact that neither witness was questioned about, or gave testimony directly addressing, Manchester, Inc., 21st Century repeatedly characterizes their testimony as though they did.

The first deposition was of Mandelbaum, who was deposed in his capacity as the Bank's intended CEO. <u>See</u> Ex. 1; Am. Order for Appearance (ECF Nos. 9, 11). Throughout the deposition, 21st Century's counsel questioned Mandelbaum about "Manchester Financial Group" and "MFG" without distinguishing between

the partnership and the corporation.  <u>See</u> Ex. 1 at, <u>e.g.</u>, 12:11-13 (asking about "Manchester Financial Group"), 73:20-24 ("for the record, … when we refer to MFG, it's Manchester Financial Group throughout").  Mandelbaum responded in kind, using the phrase "Manchester Financial Group" and "MFG" without specifying one entity or the other.  <u>See</u> Ex. 1 (ECF No. 56-3) at 67:14-20.  Since counsel never distinguished between the entities, nor did she ask Mandelbaum to do so, it is simply not clear from the record whether Mandelbaum meant to identify one entity, the other, or both.  21st Century disregards the ambiguity in Mandelbuam's deposition testimony and repeatedly cites it as support for the contention that Manchester, Inc., specifically, performed a particular act.  <u>See, e.g.</u>, Pl.'s Mot. at 4:18-20 (citing Mandelbaum deposition for the proposition that "Manchester, Inc. and MFG, LP hired Mandelbaum as a 'consultant'…."), 20:6-9 (same), 23:3-4 (citing Mandelbaum deposition for proposition that "Mandelbaum as agent for Manchester, Inc. and MFG, LP…").  For the foregoing reasons, however, his testimony does not support such contentions.  21st Century also appears to rely on Mandelbaum's references to "Manchester Financial Group" as evidence of a lack of appropriate regard for Manchester, Inc.'s separate identity.  <u>See, e.g.</u>, Pl.'s Mot. at 22:4-6.  However, since 21st Century's counsel invited the ambiguity, the Court declines to construe it against Manchester, Inc.

The second deposition was of Gibbons, who was deposed by 21st Century in his capacity as Person Most Knowledgeable of MFG, LP.[31]  <u>See</u> Order for Cont. of Appearance of Gibbons (ECF No. 37).  During the deposition, counsel for 21st Century again asked about "Manchester Financial Group" and "MFG," but this time added that "MFG, from my understanding, is a limited partnership."  <u>See</u> Ex. 4

---

[31]  The term 21st Century used to refer to Gibbons, "Person Most Knowledgeable," is more commonly encountered in depositions pursuant to California Code of Civil Procedure § 2025.230 as opposed to Federal Rule of Civil Procedure 30(b)(6).  Both provisions allow a party to depose an organization by describing the matters for examination.  <u>See</u> Fed. R. Civ. P. 30(b)(6); Cal. Code Civ. Pro. § 2025.230. The organization must then designate a person or persons to testify on its behalf.

15-cv-01848-BTM-BGS

(ECF No. 56-6) at, e.g., 12:11-13, 21:17-18. Her questions about "Manchester Financial Group" or "MFG" thus referred to the limited partnership. Gibbons, for his part, simply answered her questions, and only late in his deposition referred to "MFG" without specifying whether he meant the corporation or the limited partnership. Ex. 4 at 56:22-57:10. In light of 21st Century's counsel's statement that "MFG … is a limited partnership", and Gibbons's participation in the deposition as a witness on behalf of the limited partnership, his references to "MFG" appear to mean MFG, LP. 21st Century nevertheless construes Gibbons's deposition testimony as if it specifically discussed Manchester, Inc., and repeatedly cites it for such propositions as "[i]n his capacity as President of Manchester, Inc., and as admitted by him, Mr. Gibbons runs the day to day operations of and makes the 'operational decisions' for MFG, LP," Pl.'s Mot. at 12:6-7, and "[i]n his capacity as President of Manchester, Inc., Mr. Gibbons also made the operational decisions for the Bank, including the decisions for the Texas Bank litigation…," id. at 12:11-12. However, for the foregoing reasons, Gibbons's testimony does not provide clear support for 21st Century's contentions.

21st Century's brief contains other inaccuracies. It states:

> "January 7, 2008: Manchester, Inc., also through its limited partnership, MFG, LP, authorized and provided to 21st Century a $10,000 deposit for services to be rendered to the Bank and 21st Century began providing services. (Exhibit 5—Manchester, Inc. Check.) On February 20, 2008, 21st Century was given an additional $43,100.00 deposit for services to be rendered to the Bank. (Exhibit 6—Manchester, Inc. Check.)"

Pl.'s Mot. at 4:24-5:3 (emphasis added). Contrary to the parenthetical descriptions, Exhibits 5 and 6 are copies of checks drawn on the account of MFG, LP, not Manchester, Inc. See Exs. 5, 6.

//

//

15-cv-01848-BTM-BGS

As another example, 21st Century states,

"August 27, 2007:  Manchester, Inc., through its limited partnership, MFG, LP subleased and paid for the Bank's retail space.  (Exhibit 3— CB Richard Ellis letter; Exhibit 4—Gibbons Exam. At 44:20-48:11.)"

Pl.'s Mot. 4:21-23 (emphasis added).  Exhibit 3 does not support 21st Century's contention that "Manchester, Inc." was involved in the sublease, because the letter simply refers to "Manchester Financial Group" without specifying the partnership or corporation.  See Ex. 3. Gibbons, whose deposition excerpts are set forth in Exhibit 4, said he did not know who negotiated or signed the sublease, and he did not testify that Manchester, Inc. had any role in procuring it.  Ex. 4 at 44:20-48:11. Thus, the evidence cited by 21st Century does not support its contention that Manchester, Inc. subleased and paid for the Bank's retail space.

In sum, 21st Century's brief overstates the strength of its record against Manchester, Inc.  The Court disregards the assertions of 21st Century to the extent they do not accurately reflect the record.  Daniel F., 305 F.R.D. at 122-23.

   2) Merits

21st Century contends its evidence satisfies several of the alter ego factors so as to support a finding of liability as to Manchester, Inc.  See Pl.'s Mot. 9-10, 19-24.  Having evaluated the record carefully, the Court disagrees.

   a) Identical Ownership and Control

21st Century contends the same people, Gibbons and Doug Manchester, owned and controlled the Bank and Manchester, Inc.  Pl.'s Mot. at 3, 23.  Common legal or equitable ownership is an important component of the unity of interest required to support alter ego liability under California law.  S.E.C. v. Hickey, 322 F.3d 1123, 1130 (9th Cir. 2003), opinion amended on denial of reh'g, 335 F.3d 834 (9th Cir. 2003);  In re Schwarzkopf,  626 F.3d 1032, 1038-39 (9th Cir. 2010); Conde v. Sensa, No. 14-cv-51-JLS (WVG), 2016 WL 6082309, at *3 (S.D. Cal. Oct. 17, 2016).

Here, although 21st Century contends Gibbons and Manchester were both owners of Manchester, Inc., there is no evidence of this in the record. Nor does the Court find any evidence in the record submitted by 21st Century identifying any of the shareholders of Manchester, Inc. <u>See</u>, <u>e.g.</u>, Ex. 39, Tab 1, at 000204 (Articles of Incorporation, stating 100,000 shares to be issued), Tab 2, at 000207 (Certificate of Amendment of Articles of Incorporation, stating "no shares of stock have been issued"), Tab 7, at 000217 (Certificate of Amendment of Articles of Incorporation, stating the "total number of outstanding shares of the corporation is 100,000" without identifying shareholders). There is evidence identifying the proposed shareholders of the Bank. Proposed shareholders may qualify as owners for purposes of alter ego liability. <u>See Tatung Co., Ltd. v. Shu Tze Hsu</u>, 217 F. Supp. 3d 1138, 1177 (C.D. Cal. 2016). Here, however, the Bank's proposed shareholders were all individuals, <u>see</u> Ex. 38 (Bank organizing certificate), and did not include Manchester, Inc. Thus, the record does not support a finding that Manchester, Inc. and the Bank shared common owners.

21st Century contends Doug Manchester and Gibbons controlled Manchester, Inc. and the Bank. The exercise of control over an entity can serve as an indication of the "equitable ownership" that may support imposition of alter ego liability. <u>See In re Schwarzkopf</u>, 626 F.3d at 1039. Here, Gibbons was president of Manchester, Inc., <u>see</u> Ex. 39, Tab 7, at 000217, and he was also a proposed director of the Bank. <u>See</u> Ex. D at 018-021. However, apart from approving and signing MFG, LP checks in payment of the Bank's expenses, and serving as a contact person for Mandelbaum, the record does not indicate that Gibbons otherwise exerted control over the Bank.

Doug Manchester did oversee aspects of the Bank venture, although in what capacity is not always clear. It appears he was using his personal funds to invest in the Bank, <u>see</u> Ex. 38 (June 4, 2008 Certificate of Organization, showing Doug Manchester was to hold 1,912,700 shares of common stock), and that it was his

decision to put an end to the Bank venture. During the first meeting of the Bank's organizing Board of Directors, he stated that the Bank's pre-opening expenses would continue to be paid by "Manchester Financial Group," <u>see</u> Ex. 36, apparently referring to MFG, LP, which the record shows had been funding the Bank's pre-opening expenses up to that point. 21st Century's brief describes Doug Manchester as "Chairman of the Board" of Manchester, Inc., <u>see</u> Pl.'s Mot. at 3:11, a fact Manchester, Inc. does not appear to dispute, <u>see</u> Opp. at 22-24, Ex. D.

21st Century has not shown that Doug Manchester and Gibbons were shareholders of Manchester, Inc. and the Bank, and on this record, Gibbons's control over the Bank does not appear to have been significant. To the extent Doug Manchester's role with each entity was such that he was an equitable owner, <u>see</u> <u>In re Schwarzkopf</u>, 626 F.3d at 1038-39, this factor is not dispositive of alter ego liability, <u>Katzir's Floor</u>, 394 F.3d at 1149 ("The mere fact of sole ownership and control does not eviscerate the separate corporate identity that is the foundation of corporate law."), and as discussed below, the Court finds that the remaining alter ego factors do not support imposition of alter ego liability on Manchester, Inc.

### b) <u>Commingling of Funds</u>

21st Century contends the evidence shows commingling of funds, based on the fact that the Bank did not pay its own pre-formation expenses. Pl.'s Mot. at 19-22. However, it acknowledges the evidence indicates the funds of MFG, LP, not Manchester, Inc., were used to pay the Bank's expenses. <u>See</u> <u>id.</u> (noting the Bank's expenses were "paid with checks drawn on MFG, LP's general account"); Exs. 5, 6 (checks to 21st Century drawn on account of MFG, LP). Thus, the funds allegedly commingled were those of MFG, LP, not Manchester, Inc.

21st Century points to the fact that Gibbons signed the checks drawn on MFG, LP's account. <u>See</u> Pl.'s Mot. at 20-21. Yet it was appropriate for him to do so on behalf of MFG, LP. <u>See</u> Cal. Corp. Code § 15904.02(a). Moreover, that //

15-cv-01848-BTM-BGS

Gibbons signed MFG, LP's checks does not change the fact that the funds advanced were those of MFG, LP.

21st Century relies on the assertion that Mandelbaum was "hired … by Manchester, Inc. and MFG, LP" to show commingling. Pl.'s Mot. at 20:5-23. However, Mandelbaum's consulting agreement states it was "by and between" MFG, LP, not Manchester, Inc. Ex. 2. Although it was signed by "Doug Manchester, Chairman of the Board of Manchester Financial Group," that is not evidence of commingling of funds. To the extent 21st Century suggests that the provision's reference to "Manchester Financial Group" without the suffix "Inc." or "LP," shows the two entities were "treated interchangeably" see Pl.'s Mot. at 20:10-18, its point is refuted by the fact that the same agreement identifies the limited partnership by its full name, "Manchester Financial Group, L.P.," thereby distinguishing it from the corporation. See Ex. 2.

21st Century's last contention is that "Manchester Financial Group" subleased office space for the Bank. Id. at 22:3-17 (citing Exs. 1, 3, and 4). However, the cited evidence does not support the proposition that the subleasing entity was Manchester, Inc.

Accordingly, this factor does not weigh in favor of alter ego liability.

### c) Undercapitalization/ Failure to Issue Stock

It is undisputed that the Bank was uncapitalized and never issued stock. Pl.'s Mot. at 22:19-27, 23:21-23. Although these factors may support imposition of alter ego liability in the abstract, they do not necessarily indicate alter ego liability should be imposed on Manchester, Inc.

### d) Holding Out of One Entity as Liable for the Debts of the Other

21st Century appears to contend that Manchester, Inc. held itself out as liable for the debts of the Bank. Pl.'s Mot. at 23:3-13. 21st Century cites to the fact that Mandelbaum told Pat Jerge, 21st Century's CEO, that Doug Manchester was providing the capital for the Bank. Pl.'s Mot. at 23:3-13. 21st Century attempts to

construe this as evidence against Manchester, Inc. by characterizing the statement as one Mandelbaum made "as agent for Manchester, Inc. and MFG, LP." See id. at 23:3 (citing Ex. 1, Mandelbaum deposition). Mandelbaum did not testify he was acting as the agent of Manchester, Inc. in making this representation. 21st Century's unsupported assertion does not support a finding of alter ego liability as to Manchester, Inc. Furthermore, the referenced statement relates to Doug Manchester, rather than Manchester, Inc., providing capital for the Bank, and it relates to an investment, not an undertaking of liability, as argued by Plaintiff.

### e) Failure to Maintain Arms' Length Relationships

21st Century contends there was a failure to maintain arms' length relationships between the Bank and Manchester, Inc. It bases this contention on the fact that Doug Manchester, during the first meeting of the Bank's organizing Board of Directors, volunteered "Manchester Financial Group" to continue to pay the Bank's pre-formation expenses. Pl.'s Mot. at 23:26-24:18; see Ex. 36 at 000191. Although the corporate minutes do not specify whether he was referring to the partnership or the corporation, the record shows that before the Board of Directors meeting, MFG, LP's funds had been used to pay the Bank's expenses, see Exs. 5, 6 (checks issued to 21st Century drawn on account of MFG, LP), which tends to indicate the reference was to the partnership. 21st Century appears to concede that it was the partnership's funds that were actually used for this purpose. Pl.'s Mot. at 21:9-16 (stating that the funds used to pay pre-opening expenses were those of MFG, LP). Although Doug Manchester's act in volunteering MFG, LP's funds appears spontaneous, there is no evidence how it came about, or whether he had authority to make such a commitment. Accordingly, this factor does not weigh in favor of a finding of alter ego liability as to Manchester, Inc.

//

//

### f)  Concentration of Assets and Liabilities

21st Century claims "Manchester Financial Group, through Manchester, Inc. and MFG, LP, was the only source of funds for Bank's expenses," and "maintained control of whether or not it would pay 21st Century." Pl.'s Mot. at 24:11-16.  Yet 21st Century concedes it was MFG, LP, not Manchester, Inc., that funded the Bank's expenses.  To the extent the record can be construed as showing Gibbons managed MFG, LP's operations in his capacity as president of Manchester, Inc., his acts in that regard are imputed to the partnership.  His approval of payment of Bank expenses weighs in favor of alter ego liability, but does not, on its own, convince the Court that such liability should be imposed on Manchester, Inc.

### g) Inequitable Result

21st Century contends there will be an inequitable result if Manchester, Inc. is not held liable as the alter ego of the Bank, because its judgment will go unpaid. Pl.'s Mot. at 24:21-25:4.  However, "[t]he alter ego doctrine does not guard every unsatisfied creditor of a corporation but instead affords protection where some conduct amounting to bad faith makes it inequitable for the corporate owner to hide behind the corporate form.  Difficulty in enforcing a judgment or collecting a debt does not satisfy this standard." Sonora Diamond, 83 Cal. App. 4th at 539.  Under the circumstances presented here, the Court is not persuaded equity would be served by holding Manchester, Inc. liable in the first instance for the Bank's debt. See p. 16, supra; Eldorado Stone, LLC, 2009 U.S. Dist. LEXIS 8430, at *13-14.

### h) Summary—Alter Ego Factors

21st Century has the burden to demonstrate by a preponderance of the evidence that the alter ego factors support imposing the Bank's liability on Manchester, Inc.  Toho-Towa, 217 Cal. App. 4th at 1108;  Highland Springs

//

//

//

15-cv-01848-BTM-BGS

Conference & Training Center, 244 Cal. App. 4th at 280. On this record, the Court finds 21st Century has failed to meet its burden.

## 2. Control of Litigation

The second element of a Section 187 motion requires proof that "in their capacity as alter ego of the corporation [the proposed debtor] in fact had control of the previous litigation, and thus were virtually represented in the lawsuit." NEC, 208 Cal. App. 3d at 778 (citation and internal quotation marks omitted). Control of the litigation "may consist of a combination of factors, usually including the financing of the litigation, the hiring of attorneys, and control over the course of the litigation." Id. at 781 (citation and internal quotation marks omitted). The purpose of this element is to ensure that adding the proposed debtor to the judgment does not violate the proposed debtor's right to due process. Katzir's Floor, 394 F.3d at 1149. "The due process considerations are in addition to, *not in lieu of*, the threshold alter ego issues." Wolf Metals Inc. v. Rand Pacific Sales, 4 Cal. App. 5th 698, 703 (2016) (emphasis in original) (internal quotation marks and citation omitted).

21st Century contends it has met this element because Manchester, Inc. controlled the underlying arbitration and litigation. It bases its contention on (1) evidence that arbitration notices and briefs were sent to MFG, LP, at an address that it shared with Manchester, Inc., (2) deposition testimony of Gibbons stating he was a "contact person" from "MFG" in connection with the "Texas litigation," and that "MFG" likely funded the defense of the Bank, and (3) the Cooley law firm's overlapping representation of the individuals and entities affiliated with the Bank. Pl.'s Mot. at 13-19.

The Court does not agree the evidence establishes Manchester, Inc.'s control over the arbitration and litigation. That arbitration briefs were sent to MFG, LP, at an address it shared with Manchester, Inc., at most is an indication its representatives were aware of the arbitration. However, Manchester, Inc.'s

awareness cannot be equated with control over the proceedings.  <u>NEC</u>, 208 Cal. App. 3d at 781 ("[I]t is not enough that Hurt was 'aware' of the action between [the judgment creditor and debtor].  Surely every chief executive officer of a corporation is cognizant of claims asserted against the corporation.")

Gibbons's testimony also does not support the conclusion that Manchester, Inc. controlled the underlying litigation.  Gibbons said he served as a "contact person" for the "Texas litigation," nothing more.  <u>See</u> Pl.'s Mot. at 18:22-19:4 (citing Gibbons deposition); Ex. 4 at 54:14-58:1.  There is no evidence Gibbons hired the attorneys, discussed or controlled litigation strategy, or served as anything other than a "contact person," which does not imply control.  <u>See</u> <u>Eldorado Stone, LLC</u>, 2009 WL 347005, at *4 (the fact that a board member "attended many of the trial proceedings and paid significant litigation expenses" and "was in the driver's seat on settlement talks" did not show control of the litigation, since the member "did not select or control [the entity's] attorneys or its defense"); <u>NEC</u>, 208 Cal. App. 3d at 781; <u>Katzir's Floor</u>, 394 F.3d at 1149.  And while he testified that "MFG" likely funded the Bank's defense in connection with that litigation, as discussed above, his deposition references to MFG appear to refer to the limited partnership.  Thus, the record does not support the conclusion that Manchester, Inc. controlled the Bank's representation.

To the extent 21st Century points to the involvement of the Cooley law firm in representing individuals and entities 21st Century has pursued as alter egos of the Bank (but not the Bank itself, according to Cooley), there is no evidence indicating Manchester, Inc. selected, monitored, or controlled Cooley's representation in connection with the 21st Century dispute.  <u>See</u> <u>Eldorado Stone, LLC</u>, 2009 U.S. Dist. LEXIS 8430, at *12-14.

In addition to contending there is insufficient evidence of its control, Manchester, Inc. maintains that because the underlying arbitration was uncontested, the resulting award was the equivalent of a default judgment, such

that adding it as a judgment debtor would violate its right to due process.

"Due process 'guarantees that any person against whom a claim is asserted in a judicial proceeding shall have the opportunity to be heard and to present his defenses.'" Katzir's Floor, 394 F.3d at 1149-50 (quoting Motores de Mexicali v. Superior Court, 51 Cal. 2d 172, 175 (1958)). The "[c]ontrol of the litigation sufficient to overcome due process objections" contemplates "some active defense of the underlying claim." NEC, 208 Cal. App. 3d at 781. "In the case of default judgments, the application of the alter ego doctrine is subject to a limitation arising from considerations of due process." Wolf Metals, 4 Cal. App. 5th at 703.

The due process requirement was first recognized by the California Supreme Court in Motores. In Motores, the plaintiff sued a corporation on an unpaid loan debt and obtained a default judgment, and thereafter sought to add three individuals as judgment debtors on an alter ego theory. 51 Cal. 2d at 173-74. The Supreme Court held that adding debtors to a default judgment would violate their due process rights. The Due Process Clause "guarantees that any person against whom a claim is asserted in a judicial proceeding shall have the opportunity to be heard and to present his defenses." Id. at 176. To summarily add the proposed debtors to the judgment "without allowing them to litigate any questions beyond their relation to the allegedly alter ego corporation would patently violate this constitutional safeguard." Id.

Subsequent California cases have applied this rule even where the judgment arose from the corporate defendant's failure to litigate its defenses, rather than from a true default. See Wolf Metals, 4 Cal. App. 5th at 704 (discussing NEC). In NEC, plaintiff sued a corporation for nonpayment of purchased goods. The corporation appeared and filed a general denial. NEC, 208 Cal. App. 3d at 775. Prior to trial, the corporation's CEO and sole shareholder contemplated the corporation's potential bankruptcy, and on the day before trial, the corporate defendant notified plaintiff it would not be appearing. Id. The trial went forward on

15-cv-01848-BTM-BGS

plaintiff's evidence, and the court entered judgment against the corporation. Id. at 775-76. The plaintiff thereafter moved under Section 187 to add the CEO/ sole shareholder to the judgment, and the trial court granted the motion. Id. at 776. The Court of Appeals reversed, reasoning that Motores controlled, and that since the corporation did not appear at trial, the judgment was uncontested and the proposed debtor's interests had not been represented. Id. at 780. The appellate court also noted that the CEO's interests were not the same as the corporation's, as the corporation "had no incentive to defend the … lawsuit because [it] was on the verge of bankruptcy," whereas the CEO "was not named as a party, had no risk of personal liability and therefore was not required to intervene." Id. at 780-81. Because the interests of the corporation and CEO were different, "we cannot say that [the CEO] had occasion to conduct the litigation with a diligence corresponding to the risk of personal liability that was involved or that [the CEO] was virtually represented in the lawsuit." Id. at 781.

NEC was followed by the Ninth Circuit in Katzir's Floor, which held that it "represents the law that the California Supreme Court would apply if faced with this issue," 394 F.3d at 1150, and by the California Court of Appeal in Wolf Metals, 4 Cal. App. 5th at 703-04. In Wolf Metals, the plaintiff sued a corporate defendant for breach of contract, and as in NEC, the corporation appeared and answered the complaint. Id. at 701. The corporate defendant thereafter filed a bankruptcy action, but the bankruptcy case was summarily closed, apparently without a discharge of the claimed debts. Id. Counsel for the corporate defendant thereafter stopped appearing in the breach of contract case. Id. The trial court ordered its answer stricken, entered its default, and later entered judgment by default. Id. at 701-02. The trial court subsequently granted a motion to add the corporate defendant's president to the judgment on an alter ego theory. Id. at 702. The Court of Appeal reversed. Although the corporate defendant filed an answer, it "failed to present an evidence-based defense before judgment was entered

against it." Id. at 708 & n.4. Accordingly, under <u>Motores</u> and <u>NEC</u>, it was error to add the purported alter ego as a judgment debtor. Id. at 708-09.

Based on the foregoing cases, the Court agrees with Manchester, Inc. that adding it to the judgment would violate its due process rights. 21st Century emphasizes that the Texas district court and Fifth Circuit described the arbitration award as not a default award, since the arbitrator required 21st Century to present evidence in support of its claim. Reply at 5:4-7 (citing Exs. 17, 20). However, for purposes of Section 187, the due process question focuses not on the procedures used by the plaintiff to establish liability, but rather on the extent to which the debtor availed itself of the opportunity to present a defense. <u>NEC</u> is particularly instructive. Here, as in <u>NEC</u>, the plaintiff pursued a corporate defendant for breach of contract in arbitration proceedings. Although prior to the arbitration, Cooley sent a letter to the arbitrator regarding the Bank's legal defenses, the letter was akin to the general denial filed by the corporate defendant in <u>NEC</u> and the answer in <u>Wolf Metals</u>. Thereafter, the Bank failed to appear, and the arbitrator required 21st Century to present evidence in support of its case before issuing an award against the Bank, much like in <u>NEC</u>, where the plaintiff presented evidence at trial in support of judgment against the corporate defendant. True, in subsequent arbitration confirmation proceedings in Texas, the Bank did appear and was represented by counsel. Yet the scope of review of an arbitrator's award in the context of confirmation proceedings is exceedingly limited. <u>See Major League Baseball Players Ass'n v. Garvey</u>, 532 U.S. 504, 509 (2001) ("Courts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement."). The Bank's post-arbitration litigation thus cannot be construed as an "evidence-based" defense. <u>See Wolf Metals</u>, 4 Cal. App. 5th at 708 n.4. Moreover, as in <u>NEC</u>, Manchester, Inc. was not named in the arbitration proceedings, its interests do not //

appear to have been aligned with the Bank, and the Court cannot conclude that Manchester, Inc. had occasion to conduct the arbitration "with a diligence corresponding to the risk" involved. Accordingly, the Court finds that adding Manchester, Inc. as a judgment debtor would violate its right to due process.

In sum, 21st Century's evidence does not show that Manchester, Inc. controlled the underlying arbitration and litigation.

### 3. Summary

To succeed on a Section 187 motion to add a judgment debtor, the moving party bears the burden to establish by a preponderance of the evidence "*both* (1) that the new party be the alter ego of the old party *and* (2) that the new party had controlled the litigation…." Toho-Towa, 217 Cal. App. 4th at 1106; Katzir's Floor, 394 F.3d at 1148-50. Because 21st Century has failed to meet its burden as to either element, its motion to add Manchester, Inc. as a judgment debtor must be denied.

## IV. **CONCLUSION AND ORDER**

For the foregoing reasons, 21st Century's motion is DENIED.

IT IS SO ORDERED:

Dated: June 7, 2017

_____
Barry Ted Moskowitz, Chief Judge
United States District Court

15-cv-01848-BTM-BGS